Counsel, the next case this morning is 20-4030, Harper v. Lindon City. Counsel, please prepare to argue. Thank you. Before I begin, I would like to reserve any remaining time I have for rebuttal. I begin by quoting page 1411 of this court's seminal decision in Clark v. Tansey. Quote, the factors the district court should consider in determining the legal prejudice the include one, the opposing parties effort and expense of preparation for trial, two, excessive delay and lack of diligence on the part of the movement in prosecuting the action, and three insufficient explanation for the need to take a dismissal. We consider these factors in order, with a view toward determining whether the district court abused its discretion, close quote. I think that's all very good and interesting. Why don't you start with the jurisdictional argument first? Well, there's five reasons that we have standing. First of all, intervention as of right demonstrates Article 3 standing. Second, state and local laws recognize that zoning violations cause unique injury to adjacent landowners that are not felt by the general populace. Third, Fair Care and its members have suffered concrete injury in fact that is not just hypothetical or conjectural. Four, there's no question that the injury here is traceable to harbors conduct. Five, a favorable ruling by the district court would redress Fair Care's concerns. In fact, only a federal court can adequately redress Fair Care's concerns. Well, counsel, let me start with you. I'll go ahead, Judge effective in the event that they prevail and the decision of the City Council turning down the variance is affirmed. Is the person stopped from thereafter ever seeking similar relief or changing the facts or moving this location to a place where the applicant tries to open the same type of facility at the same location? It would be banned from seeking that type of application. He's bound now because you fail to appeal and follow through on the appeal from the denial by the City Council. Well, that would be correct. But for page nine of the district court's decision where the district court said quote, Nevertheless, the city's decision of denying Harper's application does not preclude him from filing a new application. It doesn't close quote. But I think it would preclude him from following that application. Well, little denial. Now he could change the application, but that's and that's a whole new case. So I don't really see where your five things or your four things make any difference in this situation. Well, they make a difference because the district court said you don't want to have a counterclaim here. Pardon me? Did you have a counterclaim here? No, we had a request for declaratory release and injunction in our prayers, which the Second Circuit is recognized as the functional equivalent of counterclaim. You indicated in your motion to intervene that your declaratory and you look at the prayer for relief and it validates this. Your prayer, your injunction that you saw in your prayer for relief and your declaratory judgment were designed to uphold and enforce the decision of the count of the city. And the reality is, the reality is that Hollingsworth addressed that situation where it said you don't have a right to enforce the city's ordinance. You don't have a right to seek to uphold it. That's the city's appeal. So I don't see where that having a declaratory judgment and having an injunction, if their purpose is to take action and that the city is charged with being responsible for and the city is not in this action, then how does that help you? Well, we have to pay attention to the facts here. And the facts are that Harper started operating on August 6, 2018 in violation of the city code without a business license and started conducting training meetings for this medical facility. And so we can't, the court can't just assume that, first of all, Harper is going to comply with the law and that he's going to act legally in compliance with the law at all times. And it's the city's responsibility to enforce its laws to ensure that he does. And if he seeks to file another application, it's the city's responsibility to adjudicate that. That's not your job. But that's not a correct reading of Utah law. Utah law gives adjacent property owners and property owners within 300 feet of the proposed land use under the Utah Land Use Development Management Act, the independent right to enforce city zoning laws. And Hollingsworth says that state law cannot confer federal standing. Federal law only can confer federal standing. So what Utah or the city chooses to do is entirely irrelevant to the standing question that Judge Locero started us out with. And so that's not going to help you. It doesn't matter. Well, that is actually not correct. Do you mean Hollingsworth differently? Well, you have to read that in the context of other state law, excuse me, other Supreme Court decisions that we cited in our brief that hold that you have to defer under principles of federalism and comity to decisions of the state courts and the laws of the state courts in deciding what causes an injury. And that is in terms of standing, you're saying that the state, the city and the state of Utah can confer standing on you that is valid for federal law purposes? Just like a state can create a cause of action? Yes. States create causes of action all the time. They do, but that's, but OK, well, the language of Hollingsworth, it seems to me, is to the contrary. What case are you relying on that you're telling me in some sense abrogates the language of Hollingsworth? It doesn't abrogate, but it puts it in context. In Hollingsworth, what the state court, what the states purported to do in that case was create standing for a general injury that is indistinct from the injury any member of the general public would face. That's not what Utah has done. Utah has conferred standing on adjacent landowners. The case I'm relying on is Coon v. Fairmount Coal Company, 215 U.S. 349 at page 360. And there's quite a lengthy discussion there by the Supreme Court where they say, quote, where certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the state. Those rules are accepted by the federal court as authoritative declarations of the law of the state, close quote. And so while it's the prerogative of this court to decide who does and does not have Article three standing is the prerogative of the states under our form of government to create causes of action, to create remedies. And those remedies include here the local city code that allowed us to be part of the administrative proceeding. We were every bit as much a party to that proceeding as the city was. Well, what we're talking about is standing now. We're not talking about the state's ability to give you a cause of action. We're talking about whether you have a standing to be heard here now. And to your point, your first point about essentially the fact that having intervention as a matter of right is coterminous with the notion of Article three standing. Well, Diamond, Town of Chester and Hollingsworth all were cases in which there was intervention and they had to explore whether there was an independent Article three basis for standing. So if in fact these were coterminous concepts, then why would those cases even have dealt with the issue? Well, that's because it's an open question. There's a circuit split on that question, and the court didn't address the question. And what circuit is saying anything to the contrary? Those are three Supreme Court cases that are telling us that you have to do a separate Article three inquiry and cases of intervention and which some of which are remarkably similar to this situation. So Hollingsworth being one of them. So what what what case are you talking about that would create a circuit split? Well, I'm talking about the cases that we cited in in our standing brief, but the point the point is, your honor, is that the analysis is the same, whether we call it standing or whether we call it rule 2482 analysis, the analysis is the same. And the cases, for example, Lujan, the seminal case on standing by the United States Supreme Court, it held that an aesthetic interest in wildlife is interrupted. Go ahead. I think the question I'd like to ask is this. The dismissal by the district court below was without prejudice. Is that correct? That's correct. All right. So what relief do you ask of us? Well, first of all, we ask that you follow the 10th Circuit precedent in Phillips and that a litigant should not be allowed to avoid summary judgment by seeking voluntary dismissal. We would like you to remand this and have the district court consider the summary judgment motion. Or alternatively, we would like you're essentially converting this to a mandamus proceeding or you're asking us to order the district court to do something now, given that the dismissal is without prejudice and we are all practitioners at some point in our lives, we all understand what that means. That means that you're, it seems to me, out of luck in terms of ordering the court to what are you asking us to do, to order the court to dismiss with prejudice? That would be appropriate. Well, I'm not asking you what would be appropriate. I'm asking you what relief you asked for. We're asking that the case be dismissed with prejudice because there was a pending summary judgment motion filed and in the Phillips case, the 10th Circuit case, the court said, quote, that a party should not be permitted to avoid an adverse decision on a positive motion by dismissing a claim without prejudice. Close quote. We asked for dismissal with prejudice in our summary judgment motion, and that's what the court should have done in this in this instance is dismiss the case with prejudice instead of dismissing it without prejudice. I think that's what Phillips dictates. I would further add on the issue. But you have to have standing before you can make that argument, correct? You concede that point. Yes, we always have to have Article three standing, we always have to have Article three standing, however, in in the precedence of this of this court in the county of Santa Fe case, for example, that involved an intervener and there was no question about standing because the intervener interveners owned land near the power lines that were going in. My clients live right across the street. Some of my clients live right across the street from this 16 bed commercial medical facility. And so there's no question that my clients will feel an impact from this facility, different and apart from the general populace. And that's all that Hollingsworth and those line of Supreme Court cases was concerned about is distinguishing our injury from the injury felt by the general populace and some value interest in enforcing the law. Here, it's clear that under Utah law, we have standing, we have injury. It's been recognized repeatedly in code by the Utah state legislature, by the Utah Supreme Court. And it would be error for this court to just ignore or disregard those authorities. Well, even standing, what is your injury? I still haven't figured that out. The city denied their request to do what they were trying to do and what you objected to. And the city didn't have to appeal. The city won. So now the guy turns around, says, OK, I give up. So what what injury are you looking at at this point? I would say none. Well, if those were the facts, I would be I would be pleased, but that's not what happened. Immediately after dismissal, Mr. Harper went on television and said he's opening imminently. And under Babbitt versus UFW National Union. And why didn't you file a lawsuit against the front door? Because we had this action pending. Well, but this action is moved. Well, this is what the city so we can't put in the 16 bed, whatever it is, he decided he wasn't going to pursue it further. And so you're guessing that maybe you're speculating that maybe he's going to try to sneak in and do it again. Well, I see that I'm out of time. May I just respond to the question? Please, please. In Babbitt versus UF National Union, a Supreme Court case for 42 U.S. at page 298, which we cited in our briefs, the Supreme Court says this, quote, one does not have to await the consummation of threatened injury to obtain preventive relief. Close quote. We were already a party. The dismissal in this case was based on the premise that Mr. Harper was withdrawing his application. And then immediately after dismissal, he got the application denied and he was appealing, trying to appeal that. And he chose not to. He didn't. Well, did he? That's the question. The state administrative review procedure, he went right to the federal court and he quit. And so you're only guessing that he's going to do something bad in the same spot, in the same manner that he had already been denied. I suppose I could only believe that if we disbelieve what he said on television shortly after dismissal. Thank you, counsel. Your honors, thank you. May it please the court. My name is Dick Baldwin and I represent, I believe, George Harper. The court appears to be well apprised of our position. I don't want to belabor the point, but I'd like to make a few observations. Talk about this notion that your client was trying to avoid an adverse summary judgment ruling and you should not be allowed to do that. We'll get back to the standing issue. But if we were to find standing, why isn't that argument a persuasive one? Yeah. So I think that is precisely the type of question that is being asked. It is the purpose of having discretion for a district judge in this case. In the case being used to argue that the district court in this case should have its hands tied and not have discretion, but instead should force the parties to proceed with summary judgment, including, I might add, additionally briefing summary judgment, which has not happened, but did happen in Phillips, is that Phillips was a case where the court, in fact, dismissed without prejudice. And it disagreed that doing that with the summary judgment briefing in an attempt to avoid that, it said that was not appropriate. Here, that is not at all what has happened. The party who has fair care filed a motion for summary judgment and Harper has not yet opposed. I was not counsel at the time. I'm not entirely aware of what was exactly happening with counsel specifically, but the record indicates that there was a mental breakdown, some severe issues with trial counsel that caused that to debriefing to drag out. And that motion had not yet been responded to. And that makes Phillips entirely different. Never mind the fact that in Phillips, it was the court properly exercising its discretion, which this court affirmed rather than reversing. And here the court, again, having viewed the facts and considering what it was perceiving in front of it in its proceedings, determined that the purpose here was not to avoid an adverse decision. It was really that the party against whom the active claim, the only active claims in the case that had ever been asserted was the defendant for those claims agreed. The dismissal without prejudice was appropriate at the city for the motion for summary judgment. I don't remember. Yes, there were there were two motions for summary judgment, neither of which had been opposed. And, you know, again, I can't really provide much detail as far as the reasons for that or the motivations for that. Well, I'm not really asking that. I'm just trying to understand the legal issue of whether these facts, quite apart from whatever reasons caused the non-response, whether that set of circumstances would be one where we should feel that it would be unfair to allow for a dismissal without prejudice. And your response is no, because what? Because it is precisely the type of question that is entrusted to the discretion of the district court, who has the parties before it, who understands the efforts that have been expended in the proceedings, understands the stakes at issue and can get a feel for what likely is going to happen, particularly with the likely outcome of a summary judgment motion. Only the district court judge has a sense of what that outcome might be. The parties may have their litigation positions where they believe they will win or lose, but only the district judge really has a sense of whether or not a party seeking dismissal is genuinely trying to avoid a disastrous outcome for them. And this court can't really second guess that judgment because it can't put its, you know, it can't place itself in the shoes of the district judge who's about to consider that that filed summary judgment motion. So it's precisely the type of thing that an abuse of discretion standard is designed to give latitude to a district court to determine. A key distinction that I think continually gets lost is when we're talking to go back, this is to go back to standing in the standing analysis. The touchstone here is injury. That's always the touchstone in standing analysis. And here we have a conflation of injuries in the two separate proceedings. There is a city zoning decision and the consequence of that zoning decision may have been approval to build this facility. All of Fair Care's injuries that they assert could have happened flowed from that potential decision. None of the injuries that they assert could possibly flow from the potential decision that the federal court could have reached. Even assuming that Harper had prevailed and that the federal court had said that the city's decision or its code somehow violated federal statutory or constitutional law, that wouldn't require the building to be built. It wouldn't necessarily lead to the harms. And that is and that's the standing problem in this case, because those are abstract. I'd like to get a little bit behind your argument to the point that Mr. McDonald made. His assertion is probably ad hors the record, but nonetheless tells us that you following the grant of this order or entry of this order, you called a press conference or your clients called a press conference to say, what, we're going to do it anyway, or we're going to do it again? My sense of what it was, was there was a television spot on local news program. I'm not sure if it was a paid spot, but there is a brief interview talking about what the organization does. And one of Mr. Harper's employees asserts that the city is, or sorry, that he is, that the organization is proceeding with trying to set up and build this facility, hopefully soon in Linden, in Linden. And Mr. Harper doesn't correct him and intervene on television to stop him. So are you, I don't know what you're arguing here. Are you arguing that, yes, you are going to do this here again, or no, you're not going to do it here again? You may do it in the county, but not in this location. You know, I think that's important for our standing in jurisdictional inquiry, as well as the merits. I disagree that it's important. Standing is dependent upon the injury that the plaintiff is or that the party is. And here there is no. So are you holding the ball then? Is that what you're hiding the ball? Is that what you're telling us? No, absolutely not. I'm answering the standing question first. As for what our plans are, I am unaware of Mr. Harper's future plans, and I'm sure that those are in flux. Depending upon what sort of facility he is capable of building, both under city code and practically as a business. As far as I'm aware, and certainly the record reflects that there is not some attempts to hide the ball here. There was a well, here's my point. If you if you are going to apply for a permit in this exact location, then it seems to me that we really are wasting judicial resources by not getting to the merits of this case and its decision. And that counsel is correct in his argument that they are entitled to have the case resolved. That's my only point. That's why I say this is not totally academic, what your client's intentions are. I think it would be a very different situation if the city were also here on appeal, but the city doesn't agree that the same stakes exist and state law here. Some stakes exist? What does that mean? The potential injuries are not the same. That whether the district court rules here in favor of either side does not mandate the city to grant the zoning application. That's where the harm arises for fair care is from the building of the of the facility, whether the city's code is constitutional or not, is exactly the type of injury that the Supreme Court has said is inadequate for standing. And so whether it may be, you know, whether there may be a sense in which there are judicial resources that could be perhaps cut, you know, we could more efficiently deal with with with possible disputes by addressing them before their standing. That may be true. I guess we're parsing our words very carefully here, but I understood the injury not to be the actual construction of the facility that I understood an essential element of the injury, not to be the actual construction, but the excuse me, but the granting of the permit to do so, which is what we're talking about. Now, if you're not going to apply for another permit in this location, it seems to me that we dismiss the case. It's moot upon that declaration. But if that is not your declaration, then the case is not moot. And it seems to me that we have to get to the difficult merits of both standing in the decision and the decision itself. I don't know what Mr. Harper's plans are, and I'm certainly not in a position to tie his hands in the future about what sort of application he might seek. It seems to me that well, then it seems to me that what you're asking us to do is to keep the case alive, and that's very helpful to me. And so, I'm sorry, so even if Mr. Harper won, the reality is there has to be another application process, right? I mean, even if he had prevailed on these legal issues, the whole question is the city has the authority to rule on an application. Perhaps they would have had to adjust their legal regime for ruling, but there would still need to be an application, right? That's precisely it. And so, the distinction between- And what's wrong with this application? What are we going to do? Have duplicitous litigation? He lost on this application, right? Yes. And that's why the distinction- So, you want another bite at the apple. That's what I mean by duplicitous litigation. You lost, but now you're going to file another application for the very same place, under the very same circumstances. I guess we'll have a do-over. If it's the same application, Judge Lucero, it would absolutely be barred. That has already been decided. If this exact same application is filed, there's no question that the city would properly deny it. By this same application, you mean at this very same location? Yes, and with the same evidentiary record to support it. This is an administrative proceeding with expert testimony. That answer is very helpful to me. Thank you. Okay. And Judge Holmes, you raised this point, but I would like to just reiterate that the question of whether intervention is a matter of right answers the standing question, flies in the face of all of the Supreme Court's intervention standing cases. It would be quite strange if the Supreme Court had decided to try to figure out how to thread a needle through this doctrine when the simple answer was simply that if you're an intervener as a matter of right, then you have standing. And in fact, Diamond is therefore wrongly decided if that's the case. So Hollingsworth, you know, read in context of prior cases that came before it, there's no way really around the Supreme Court's instruction that intervention as a matter of right does not foreclose a standing problem. Okay. Let's see. Lastly, Judge Kelly, this sort of touches back on the discussion that we were just having. But in a question you asked, I just want to make sure that I've been very precise in describing what I think is the key problem here about defining the injuries at play. On the one hand, in the administrative zoning decision, it's whether we could build this location. And in the federal case, it's whether or not there are civil rights violations arising from that proceeding. In asking the question, you had wondered whether, you know, let's posit that Harper had prevailed in this federal litigation. And you described it as, let's assume that the city's decision is affirmed by the federal court. And I just want to be precise to say, I think that's part of the conflation that's happening here that's confusing the standing analysis. Standing requires an injury that would arise in this case. And this case is a civil rights case about the city's decision and its zoning code, and not whether or not the city should be affirmed, whether it was proper under state law to deny the zoning application. That was the administrative appellate procedure that we decided to forego. And we have lost the ability to appeal on the merits of the zoning decision. This is instead whether or not there's a violation of federal statutory or constitutional law that should, that the city violated in making that determination. So I don't feel the need to really belabor the point. It seems as if the court is well aware of our position. And actually, one more point as I wrap up. One final point that I'd like to make about the possibility of avoiding an adverse decision here is there's a suggestion. It seems to me that the heart is the potential for a preclusive value. And that's a key distinction with Phillips as well, where in Phillips, the parties had briefed the issues, which means it had been fully and fairly litigated, and the court could have made the decision. Here, that's not the case. So whether there even could be preclusive value, if the court decides it has standing and the court decides that perhaps avoiding an adverse decision is a problem here, it's not even clear that there would have been any preclusive value that would have benefited fair care in this case. Because this has not, the summary judgment motions had not been opposed. They were not fully and fairly litigated. And the district court suggested that it may not have even been a terribly clear decision on the merits or a resounding victory of the type that fair care as a surgeon would be. And on that basis, we would ask that you affirm the district court. And thank you very much. Thank you, Mr. Did Mr. McDonald have additional time? No, he had a judge. I'd like to ask a question with Judge Kelly and Holmes permission, Mr. McDonald, given given counsel statement that they would not apply for a position for a in this location. Why should we just dismiss the cases moot and decide there is a lack of standing? I'm glad that the court asked that question. And I have four brief things to say in response to that. First of all, very quick, very quick. Yes. If you haven't watched the video of Mr. Harper on TV, you really should. Days after telling the district court he was withdrawing, he announced that argument. What else? Okay. And since counsel conceded that Harper, that if Harper makes the same application for the same type of facility at the same location, it would be barred at that. At this point, the only way this court can dismiss on standing is if it concludes that the denial of the application by the city and the untimely appeal make a treatment facility at this location raised judicata as to the same application at the same location. And that is essentially the relief we ask. Thank you, counsel. I think we're hearing the argument now as repetitive. Thank you. Thank you very much. All right. Counselor excused. Case is submitted.